IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
JUN 30 2001
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| CAREN J. TIDWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| vs. | ) | |
| | ) | 00-C-1197-S |
| BELLSOUTH TELECOMMUNICATIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED
JUL 02 2001

**MEMORANDUM OPINION**

Both parties have moved for summary judgment in this case arising under the Employee Retirement Income Security Act, 29 U.S.C. §1101 *et seq.* ("ERISA").

Plaintiff Caren J. Tidwell alleges that, in violation of ERISA, she was denied coverage under Defendant BellSouth Telecommunications, Inc. ("BellSouth")'s Short Term Disability Plan ("STD Plan") for the periods of July 13, 1995, through July 23, 1995; and April 25, 1996, through May 10, 1996. The dispositive legal issue is whether BellSouth's decision denying such benefits to Plaintiff is arbitrary and capricious.

Based on the undisputed facts, BellSouth is entitled to judgment as a matter of law.

I.

Plaintiff worked for BellSouth as an Administrative Reports Clerk. Because of various injuries, she applied for benefits under BellSouth's STD Plan[1] at different times. It is undisputed

---

[1] The STD Plan requires that an employee meet its definition of "disability," which is:
    You are disabled if you are unable to perform any type work as a result of a physical or a mental illness or an accidental injury. Any type work includes your regular job with or without accommodations, any other company job (regardless of availability) with or without

that the STD Plan is an ERISA plan.

On January 30, 1995, Plaintiff did not report for work because of a back condition. STD benefits were approved for the period of January 30, 1995, through March 8, 1995. (Def. Exh. 5 at 521-22.)

On May 11, 1995, Plaintiff was absent from work because of back surgery. STD benefits were approved from May 11, 1995, through June 22, 1995. (*Id.* at 525.)

On July 12, 1995, Dr. Savage indicated that Plaintiff could return to work. (*Id.* at 633.) She returned to work on July 24, 1995. (*Id.* at 526.) BellSouth denied her application for benefits for the period of June 23, 1995, through July 23, 1995. Plaintiff appealed to the Employees' Benefit Claim Review Committee ("EBCRC"), a committee composed of BellSouth employees.

Upon review of her claim, the EBCRC found that Plaintiff was entitled to benefits from June 23, 1995, though July 12, 1995. (*Id.* at 529.)[2] However, the EBCRC affirmed BellSouth's denial of benefits to Plaintiff for the period of July 13, 1995, through July 23, 1995.

On October 30, 1995, Plaintiff suffered a fall while at work and further injured her back.

On April 18, 1996, Plaintiff reported that she would be absent from work due to illness. (*Id.* at 527.) On April 22, 1996, Marcia Wooding, Manager of Disability Benefits, wrote to Plaintiff

---

accommodations, or temporary modified duties.
(Def. Exh. 2 at 1.)
    Additionally, the STD Plan Summary Description provides that
> Each [Employees' Benefit Claim Review Committee] EBCRC, for the participating companies it serves, has been delegated exclusive, discretionary authority to finally and conclusively interpret and administer the provisions of the plan. The EBCRC's decisions are final and are not subject to further administrative review.

(*Id.* at 9.)

[2] Indeed, the evidence shows that on June 22, 1995, Dr. Savage stated that Plaintiff was "... Medically unable to return to work until after next office visit on 7-12-95. Still recovering from surgery. Could possibly do very light-sedentary work now if available...." (*Id.* at 525.)

reminding her that to be qualified for STD Plan benefits, she must demonstrate that she is disabled from all work. (*Id.* at 436.)

On May 1, 1996, Plaintiff wrote to BellSouth concerning her physical condition, but she did not include any medical records or other evidence in the letter. (*Id.* at 538-42.)

BellSouth denied Plaintiff's requested benefits for the period of April 24, 1996, through May 10, 1996. This denial was affirmed by the EBCRC on August 6, 1996.

Plaintiff's STD Plan Benefits file, (*id.* at 520-29), reflects that on March 18, 1996, Dr. Bramlett examined her and found that "her job restriction allow[s] her to work on a day to day basis." (*Id.* at 527.)

On April 4, 1996, Plaintiff underwent a cervical spine MRI and a lumbar spine MRI. (Pla. Exh. 14.) On April 13, 1996, a note from Dr. Faulker stated that Plaintiff "was under our care and off work." (Pla. Exh. 17.) On April 26, 1996, Leesa Miles, physical therapist, reported that Plaintiff was being treated three times a week for decreased strength, sensation deficits, and low back pain/neck pain. (Def. Exh. 5 at 529.)

All of this medical evidence was included in Plaintiff's file at the time of the EBCRC's review of her claim on August 6, 1996.

On May 10, 1996, Plaintiff was terminated by BellSouth. (*Id.*)

Plaintiff has submitted to the Court a report from Dr. Anne Mason dated November 18, 1996, which states, in part,

> Caren Tidwell is my patient. She has multiple injuries that are solely job related. . . . A Slight Narrowing of the C 4-5 and Bulging Disk at the C 5-6 and C 6-7 levels of the Cervical Spine. . . . Repetitive Trauma to the right carpal tunnel. . . . Repetitive Trauma to the right scalene muscles. . . . Chronic pain and stress has caused Alopecia Areata which she receives medical treatment from a dermatologist. . . . A sacroiliac joint injury caused by repetitive lifting, bending, and twisting. This injury has caused leg length disparity. This injury has also caused multiple musculoskeletal problems. Because of this injury, the hips, knees, ankles, (and plantar fascitis) are

effected and will produce a deteriorating condition over the long term. . . . This patient has chronic lumbar and coccyx pain. . . . The most severe injuries are moderate to severe mechanical arthritis at the L 3-4 . . . L 4-5 . . . and extremely severe mechanical arthritis at the L5-S1. This was solely job related (a repetitive lifting, bending, twisting injury) and can be verified by more than one of her attending physicians. This condition has caused severe lorcosis in which patient has lost 2 inches in height. Note: patient was "light duty" restricted by Dr. Beverly Warren-Lynch and Dr. Perry Savage after her 5/11/95 back surgery in which the company refused to observe. . . . Patient has reached maximum medical improvement / these injuries are 100% permanent and will have little or no change over the short term and deteriorating over the long term. She has also complied to physicians request and sincerely tried to achieve medical improvement. . . . She was also terminated by her employer.

(Pla. Exh. 19.) On November 22, 2000, Dr. Oepen found that Tidwell was disabled and that he did "not forsee return to work." (Pla. Exh. CT-18.)

II.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the U.S. Supreme Court held that if a benefits plan gives the plan administrator or fiduciary discretionary authority to determine the eligibility for benefits and to construe the terms of the plan, the "abuse of discretion" standard applies when a court reviews the denial of benefits challenged under ERISA, section 502(a)(1)(B). Since *Firestone*, the Eleventh Circuit has applied the arbitrary and capricious standard in reviewing the denial of benefits under ERISA plans. *See Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 38 (11th Cir. 1989); *Jett v. Blue Cross & Blue Shield, Inc.*, 890 F.2d 1137, 1138 (11th Cir. 1989).

A court's inquiry into whether a decision was arbitrary and capricious is limited to consideration of "the facts as known to the administrator at the time the decision was made." *Jett*, 890 F.2d at 1139.

Where a potential conflict of interest exists, as is the case in the present action, the Eleventh Circuit has established a variation of the arbitrary and capricious standard. First, a court determines

"the legally correct interpretation of the disputed plan provision," and then it evaluates "whether the fiduciary was arbitrary and capricious in adopting a different interpretation." *Brown v. Blue Cross & Blue Shield, Inc.*, 898 F.2d 1556, 1570 (11th Cir. 1990).

If a fiduciary acting under a possible conflict of interest (such as the EBCRC) correctly interprets the language of the plan, then a court proceeds no further under *Brown*. *Presley v. Blue Cross-Blue Shield*, 744 F. Supp. 1051, 1056-57 (N.D. Ala. 1990) (Nelson, J.).

III.

It is undisputed that the language of the STD Plan confers to the EBCRC discretionary authority, reviewable under the heightened arbitrary and capricious standard.

It is clear that the EBCRC correctly interpreted the language of the Plan. Plaintiff has not presented any contrary evidence. Based on its proper interpretation of the language of the Plan, the EBCRC overturned BellSouth's denial of STD benefits for a portion of the requested period. There is no evidence that Plaintiff was impeded in presenting any medical evidence to the EBCRC, or that the fiduciary failed to consider any evidence presented to it.

Plaintiff's position is that the EBCRC and the Court should consider evidence not presented to the fiduciary. Such is not the law.

Plaintiff has failed to show any arbitrariness or capriciousness in the decision denying benefits.

By separate order, summary judgment will be granted to BellSouth.

Done this 30th day of June, 2001.

Chief United States District Judge
U.W. Clemon